**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DOUG W. H., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )     Case No. 19-CV-16-CVE-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|        Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Doug W. H. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.    General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 43-year-old male, applied for Title II disability insurance benefits on February 19, 2016, alleging a disability onset date of June 18, 2015, later amended to February 9, 2016, the date he suffered a heart attack. R. 15, 158-159, 170-171. Plaintiff claimed he was unable to work due to conditions including massive heart attack, diabetes, depression, ADHD, arthritis, and sexual dysfunction. R. 180. Plaintiff's claim for benefits was denied initially on May 26, 2016, and on reconsideration on July 20, 2016. R. 58-82. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on November 13, 2017. R. 40-57. The ALJ issued a decision on February 2, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other jobs existing in the national economy. R. 15-28. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2020, and that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of February 9, 2016. R. 17-18. At step two, the ALJ found that Plaintiff had the following severe impairments: status-post myocardial infarction, hypertension, coronary artery disease status-post stenting, diabetes mellitus, and obesity. R. 18. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in all four areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 18-19. At step three, the

ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 19.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's third-party statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work as follows:

> [T]he claimant can lift and/or carry ten pounds occasionally and up to ten pounds frequently. He can stand and/or walk at least two hours in an 8-hour workday. He can sit at least six hours in an 8-hour workday.

R. 19-20. At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. R. 26. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other sedentary work, such as Order Clerk Food and Beverage; Optical Goods Assembler; and Table Worker. R. 27. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.   Issues**

Plaintiff raises three points of error in his challenge to the denial of benefits, which the undersigned re-organizes into four: (1) the ALJ failed to properly consider the medical evidence supporting the severity of Plaintiff's cardiac condition; (2) the ALJ failed to consider the combined effect of all of Plaintiff's medical conditions; (3) the ALJ erred in evaluating Plaintiff's subjective testimony; and (4) the ALJ failed to meet the step-five burden to show that jobs existed in significant numbers that a person could perform with Plaintiff's RFC. ECF No. 13.

**IV.     Analysis**

    **A.     ALJ Reasonably Considered the Objective and Opinion Evidence Regarding Plaintiff's Cardiac Condition**

Plaintiff argues the ALJ committed reversible error by failing to properly consider the evidence supporting the severity of his cardiac condition. Specifically, Plaintiff argues the ALJ failed to properly assess (1) the results of two echocardiogram ("echo") studies, (2) a treatment note regarding Plaintiff's heart condition from cardiologist Andrew Kurklinsky, M.D., (3) opinion evidence addressing the severity of Plaintiff's cardiac condition from treating physician Raj Chandwaney, M.D., and (4) a treatment note regarding Plaintiff's cardiac condition from treating physician Robyn Lovitt, M.D.[1]

        **1.     Echo Studies and Dr. Kurklinsky's Medical Notations**

Following a heart attack that occurred on February 9, 2016 (the amended alleged onset date), Plaintiff underwent an echo on June 10, 2016. R. 371. The echo showed "[l]ow normal left ejection fraction of 50-55%"[2] and an "[a]bnormal septal motion without other regional wall motion abnormalities appreciated"; "[m]ild concentric left ventricular hypertrophy"; "[m]ild left ventricular diastolic dysfunction with normal left atrial volume"; and "[n]o functionally significant valvular disease." R. 371. The left ventricular diastolic function was noted to "mildly impaired

---

[1] In the reply brief, Plaintiff appears to argue for the first time that he met or equaled a step-three listing for either his cardiac condition or a combination of impairments. *See* ECF No. 16 at 1-2. The undersigned declines to address issues raised for the first time in a reply brief. *See Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) ("'[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.'") (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)).

[2] Ejection fraction "is a measurement of the percentage of blood leaving your heart each time it contracts." The Mayo Clinic, *Ejection Fraction: What does it measure?* https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited May 16, 2020). An ejection fraction of 55% or higher is considered normal, and between 50 and 55% is usually considered borderline. *Id.*

(grade 1) with a relaxation abnormality demonstrated." *Id.* On November 14, 2016, Plaintiff underwent a second echo, which was interpreted by Dr. Kurklinsky. R. 442-443. The November 2016 study showed a left ventricular ejection fraction of 55%, "[d]istal septal and apical hypo to akinesis," and "[d]iastolic noncompliance." R. 442. Dr. Kurkslinsky further noted the diastolic dysfunction was "Grade II." R. 443. In November 2017, Dr. Kurklinsky further noted that Plaintiff's "[s]hortness of breath is not adequately explained by his objective coronary anatomy as was recently clarified," and "[h]e will benefit from repeat echocardiogram with careful assessment of diastolic function." R. 453.

Plaintiff contends the ALJ's RFC is not supported by substantial evidence, because the ALJ erroneously concluded Plaintiff's echo results showed "ejection fraction is within normal limits," and because he misinterpreted Dr. Kurklinsky's notation as stating, "Dr. Kurklinsky found the claimant's shortness of breath was not adequately explained by his objective coronary anatomy." R. 26.

Plaintiff's arguments are unpersuasive. The ALJ addressed the June 2016 echo study and accurately noted the study's conclusions, including the "low normal" left ejection fraction of 50-55%. R. 22 (citing R. 371). While the ALJ did not discuss the November 2016 echo study, the results of that study – including left ventricular ejection fraction of 55% – were not materially worse than those from the June 2016 study. R. 442-443. It is well established that, while an ALJ must discuss evidence that is inconsistent with the RFC, he is not required to discuss every piece of evidence in the record. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted). Here, the ALJ did note the August 2017 visit with Dr. Kurklinsky, where Dr. Kurklinsky reviewed and interpreted the November 2016 echo results. R.

6

23-24 (citing R. 442-443). The ALJ noted Dr. Kurklinsky's conclusion that Plaintiff's coronary artery disease was stable and his recommendation that Plaintiff discontinue Plavix and continue on aspirin, beta blocker, and statin. R. 24 (citing R. 443). Dr. Kurklinsky's notations from that visit suggest Plaintiff's condition was stable, rather than materially worse compared to June 2016.

Plaintiff focuses on the change between the two echo readings regarding the "grade" of diastolic dysfunction, noting that the June 2016 echo found "Grade I" diastolic impairment while the November 2016 echo was interpreted as "Grade II" diastolic dysfunction. *See* R. 371, 443. However, the November 2016 study showed an ejection fraction of 55%, which is in the same low normal range as the 50-55% ejection fraction from the June 2016 study. Plaintiff fails to point to any evidence demonstrating that the noted change from "Grade I" to "Grade II" meant that his cardiac condition materially worsened, or that such a change would have any bearing on his functional limitations. To the contrary, Dr. Kurklisnky's treatment notes following the second echo indicate Plaintiff's heart function was stable. R. 443. Accordingly, the ALJ's failure to address the November 2016 echo and the "grade" notations was not error. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

The undersigned additionally identifies no error in the ALJ's reading of Dr. Kurklinsky's November 2017 treatment note that "Plaintiff's shortness of breath is not adequately explained by his objective coronary anatomy as was recently clarified" and that Plaintiff would "benefit from repeat echocardiogram with careful assessment of diastolic function." R. 453. Plaintiff contends Dr. Kurklinsky's note reflected awareness and concern about Plaintiff's diastolic dysfunction. He argues the ALJ improperly interpreted Dr. Kurklinsky's note as inconsistent with Plaintiff's

7

statements about the intensity, persistence, and limiting effects of his alleged shortness of breath. *See* R. 24. However, the ALJ properly recited Dr. Kurklinsky's note, which reasonably indicates that Plaintiff's objective coronary anatomy does not adequately account for his shortness of breath. Plaintiff simply asks the undersigned to substitute its judgment for the ALJ's, which is not permitted. *See Hackett*, 395 F.3d at 1172.

### 2. Opinion Evidence from Dr. Chandwaney

Plaintiff argues the ALJ improperly assigned "no weight" to a letter opinion from treating physician Dr. Chandwaney. When a medical opinion comes from a treating source, the ALJ must give it controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ finds the opinion is deficient in either respect, then the ALJ must consider several factors in determining the weight to be given to the medical opinion. *See* 20 C.F.R. § 404.1527(c). Those factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. *Id.* If, after considering the relevant factors, the ALJ rejects the opinion completely, "he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted). In all cases, the ALJ must give "good reasons" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1301.

In May 2016, Dr. Chandwaney prepared a letter opinion, which stated that Plaintiff's myocardial infarction "has caused significant injury to his heart," and he "has had a difficult

recovery since that heart attack." R. 387. Dr. Chandwaney stated that Plaintiff "has been unable to perform any strenuous activities." *Id.* He noted his hope that, "through participation in cardiac rehabilitation, smoking cessation and optimal medical therapy, his condition might improve in the future." *Id.* However, he opined that, "[f]or the time being, I do believe he is physically disabled due to his medical condition." *Id.*

The ALJ stated he was giving "no weight' to Dr. Chanwaney's opinion that Plaintiff is physically disabled. R. 26. The ALJ explained that Dr. Chandwaney's opinion was for only a period of time, and the opinion was given prior to Plaintiff's updated (June 2016) echo showing an ejection fraction of 50-55%. *Id.* The ALJ further explained that Dr. Chandwaney's opinion was contradictory, in that he stated Plaintiff could not do any strenuous activities, which does not equate to a complete physical disability. *Id.* Lastly, the ALJ explained that a determination of disability is an issue reserved to the Commissioner. *Id.*

Plaintiff argues the ALJ's weighing of Dr. Chandwaney's opinion was improper, because the November 2016 echo showed Plaintiff's diastolic function worsened, and because Dr. Chandwaney was a treating physician and a specialist in cardiology. Plaintiff's arguments fail. First, as explained above, the November 2016 echo showed an ejection fraction of 55%, which is no worse than the 50-55% ejection fraction from the June 2016 echo, and the change in "grade" does not itself reflect a material worsening of Plaintiff's heart condition. Second, regardless of Dr. Chandwaney's specialty, the ALJ appropriately rejected Dr. Chandwaney's opinion that Plaintiff was physically disabled, because it is an opinion reserved solely to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(3) (explaining that opinion that claimant is disabled is not a medical opinion but is opinion on issue reserved to Commissioner, because it is a case-dispositive administrative finding); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th

9

Cir. 1994) (treating physician's opinion on issue reserved to Commissioner is not binding on Commissioner in making his ultimate determination of disability).

The only functional limitation Dr. Chandwaney mentioned was an inability to perform "any strenuous activities," which is vague and unsupported by specific assessments. R. 387. *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (physician's statement providing no information about the nature and severity of claimant's physical limitations or activities he could still perform was not a true medical opinion). Moreover, as the ALJ noted, a restriction of no "strenuous activities" does not equate to a complete physical disability. R. 26. The undersigned finds the ALJ provided specific and legitimate reasons for rejecting Dr. Chandwaney's opinion, in compliance with the regulations and Tenth Circuit law. *See* 20 C.F.R. § 404.1527(c); *Watkins*, 350 F.3d at 1301. Even though Dr. Chandwaney was a cardiac specialist and Plaintiff's treating physician, his opinion was vague, unsupported with clinical findings, internally inconsistent, and included opinions reserved to the Commissioner. Nor was the ALJ required to re-contact Dr. Chandwaney regarding his opinion or seek another medical opinion, as Plaintiff points to no issues, such as insufficient or inconsistent evidence, that would require further development of the record. *See* 20 C.F.R. § 404.1520b(b)(2)(i) (ALJ may re-contact medical source when evidence is inconsistent or insufficient for determination of disability). Accordingly, the undersigned identifies no error.

### 3. Dr. Lovitt's Treatment Note

Plaintiff argues the ALJ improperly evaluated a treatment note from Plaintiff's primary care physician, Dr. Lovitt. In September 2017, Dr. Lovitt noted during an office visit that Plaintiff had been told by his previous doctor and cardiologist that he should not be doing any strenuous activity. R. 446. Dr. Lovitt noted that, "[a]t this juncture, I would not clear him for any strenuous activity or work without first clearing with a cardiologist." *Id.*

The ALJ stated that Dr. Lovitt's note did "not conflict with the sedentary [RFC] assessment given" in the decision. R. 26. Plaintiff argues assessment of Dr. Lovitt's opinion was improper, because the November 2016 echo showed Plaintiff's diastolic function worsened, and because there is no evidence showing that Dr. Lovitt's opinion is consistent with a sedentary RFC. Plaintiff's arguments fail. First, as explained above, the November 2016 echo showed an ejection fraction of 55%, which is no worse than the 50-55% ejection fraction from the June 2016 echo, and the change in "grade" does not itself reflect a material worsening of Plaintiff's heart condition. Second, sedentary work is the least physically strenuous kind of work, and the ALJ appropriately found that a limitation of no strenuous activity or work is consistent with a sedentary RFC. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (recognizing that even the more physically strenuous work category of "light" work involves "only minimally strenuous activities"). Third, to the extent Plaintiff argues Dr. Lovitt's statement meant she would not clear Plaintiff for *any* work (as opposed to *strenuous* work) before checking with a cardiologist, the statement is ambiguous and the ALJ's interpretation as "strenuous work" was reasonable. *See* R. 26.

> **B.    ALJ Reasonably Considered the Evidence Regarding Combined Effect of Plaintiff's Physical and Mental Impairments**

Plaintiff contends that the ALJ failed to consider the combined effect of all of Plaintiff's severe and non-severe impairments, including his severe impairments of heart-related problems, obesity, and diabetes mellitus ("diabetes"), and his non-severe but medically determinable impairments of depression and ADD. *See* R. 18-19. Plaintiff focuses on the effects of his obesity and his mental impairments as grounds for reversal.

The regulations require an ALJ to "consider all of [a claimant's] medically determinable impairments . . . including [] medically determinable impairments that are not 'severe'" in

assessing RFC. 20 C.F.R. § 404.1545(a)(2). The Social Security Administration requires this analysis because, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." Social Security Ruling ("SSR") 96-8p.

### 1. Obesity

Plaintiff argues the ALJ committed reversible error by failing to properly assess obesity when determining Plaintiff's RFC. An ALJ must consider the effects of obesity as part of the RFC determination. *See* SSR 02-01p, 2000 WL 628049. Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.* The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. Oct. 21, 2016).

Here, the ALJ found that obesity was a severe impairment at step two. R. 18. At step three, he stated that he considered obesity as set forth in SSR 02-01p and noted that he would consider "any functional limitation resulting from the obesity in the [RFC] assessment in addition to any limitations resulting from any other physical or mental impairment identified." R. 19. In the RFC discussion, the ALJ noted Plaintiff's morbid obesity and his height, weight, and BMI as observed throughout the record. *See* R. 22-24.

Plaintiff argues the ALJ should have expressly considered the effect of Plaintiff's obesity on functions such as sitting, manipulation, and fatigue. However, Plaintiff cites to no records in

which a medical provider attributed any additional functional limitations due to obesity. By contrast, at a recent physical exam, Dr. Kurklinsky noted Plaintiff's morbid obesity but observed essentially normal physical findings consistent with the ALJ's RFC determination. *See* R. 454 (November 2017 office exam by Dr. Kurklinsky).

The undersigned finds the ALJ's discussion of obesity was reasonable and sufficient. The ALJ clearly acknowledged and addressed Plaintiff's obesity at steps two and three, and in discussing the RFC, but nonetheless found Plaintiff could perform sedentary work. Plaintiff points to no conflict or lack of development in the record regarding obesity. He also has not pointed to any medical evidence indicating his obesity resulted in functional limitations greater than those stated in the RFC. *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error in obesity evaluation where ALJ found obesity severe and included specific postural limitations consistent with record but did not specifically mention obesity in RFC determination). The diagnosis of obesity does not necessarily translate into functional limitations. The undersigned identifies no error in the ALJ's consideration of Plaintiff's obesity.

### 2. Mental Impairments

Plaintiff contends the ALJ committed error by failing to find any mental RFC limitations, which he alleges stemmed from his obesity and diabetes. At step two, the ALJ found medically determinable but non-severe impairments of depression and ADD. R. 18. In assessing Plaintiff's mental limitations, the ALJ found Plaintiff had "mild" limitations in all four of the "paragraph B" mental impairment criteria. *Id.* He further determined that Plaintiff's mental impairments did not result in any specific RFC limitations. R. 19-20. At step five, the ALJ concluded that, based on Plaintiff's age, education, work experience, and RFC, he could perform unskilled work. R. 27. According to agency guidance, unskilled work involves only simple tasks, little or no judgment,

13

minimal concentration and social interaction, only routine changes, and concentration or attention for no more than two hours at a time. *See* 20 C.F.R. § 416.968(a); SSA Program Operations Manual System ("POMS") DI § 25020.010(B)(3).

To the extent Plaintiff argues the ALJ was required to add mental RFC limitations based on his step-two findings, Plaintiff's argument fails. An ALJ is not necessarily bound by his step-two findings when determining a claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). The ALJ found Plaintiff experienced mild limitations in the broad areas of mental functioning, but he did not find those limitations sufficiently severe to require functional limitations in the RFC. R. 18, 19-20. Plaintiff points to no part of the objective medical record to support a finding that his depression and ADD caused greater limitations than the ALJ found. By contrast, the ALJ noted that the state agency psychological reviewers opined Plaintiff had no severe mental impairment, and he found "very little evidence of mental health treatment in the case record." R. 25. Accordingly, the record supports the ALJ's finding of no functionally limiting mental impairments.

Plaintiff further argues that the ALJ failed to incorporate into the RFC Plaintiff's statements regarding his mental limitations, which the ALJ "accepted" at step two. ECF No. 13 at 7. Plaintiff points to his own Function Report statements that he could pay attention for two minutes, did not finish what he started, and needed reminders for medication and to go places. *See* R. 18 (citing R. 224, 226, 227). In assessing the "paragraph B" criteria at step two, the ALJ recounted those statements in determining that Plaintiff had mild limitations in the two functional areas of (1) understanding, remembering, or applying information and (2) concentrating, persisting, or

maintaining pace. *Id.* However, the ALJ's recitation of those statements from Plaintiff's Function Report does not mean that he was obliged to incorporate those limitations into the RFC or otherwise accept them as determinative of Plaintiff's mental limits. As the ALJ noted in his discussion of the RFC, "[t]here is very little evidence of mental health treatment in the case record." R. 25. Plaintiff points to no objective findings in support of his argument that additional mental RFC limitations were warranted. The undersigned identifies no error.

In sum, the undersigned finds that the ALJ adequately addressed Plaintiff's impairments and summarized the relevant medical and nonmedical evidence in support of his functional limitations. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (identifying no error in considering the combined effect of claimant's impairments where ALJ opinion addressed claimant's various impairments, and there was nothing to suggest they were not properly considered).

### C. ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological

disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[3]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Here, the ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 24. He explained that Plaintiff's statements in this regard were inconsistent, because Dr. Kurklinsky found no objective coronary anatomy for Plaintiff's shortness of breath; test results demonstrated a normal ejection fraction; physical exams were generally within normal limits; and his doctors noted his coronary artery disease, hypertension, and diabetes were stable. R. 24-25. The ALJ concluded the objective medical evidence supported the ability to perform sedentary exertion work as described in the RFC. R. 25.

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Plaintiff alleges the ALJ erred in this analysis, by overlooking the significance of the findings from the November 2016 echo study, by improperly evaluating Dr. Chandwaney's opinion and Dr. Kurklinsky's August 2017 treatment note, by failing to consider that Plaintiff's activities may be structured to minimize his symptoms, and by failing to take note that Plaintiff regularly sought treatment for his conditions. However, as explained above, the undersigned finds that the ALJ appropriately evaluated the evidence regarding Plaintiff's echo study results, Dr. Chandwaney's opinion, and Dr. Kurklinsky's treatment note. Plaintiff does not dispute that his physical exams were generally normal throughout the record or that his treating physicians regularly noted that his coronary artery disease, hypertension, and diabetes were stable. *See* R. 34-35, 37-38, 350-351, 356-357, 362-363, 373, 411-412, 414-415, 417-418, 420-421, 422-423, 425-426, 428-429, 431-432, 438-439, 442-443, 446, 449, 453. *See also Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (routinely normal clinical examination findings undermined claimant's allegations).

As for Plaintiff's daily activities, Plaintiff fails to make any specific argument on this point except to contend that he is "significantly impaired by his comorbid medical conditions." ECF No. 13 at 9. Plaintiff's argument is vague and unpersuasive for the reasons explained above in Part IV.B. As for Plaintiff's regular attempts to obtain treatment for his conditions, the ALJ noted Plaintiff's treatment history, as well as Plaintiff's financial limitations preventing him from obtaining additional testing and treatment. *See* R. 21-24. Plaintiff points to no evidence in support of his argument. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084. The undersigned finds the ALJ's consistency discussion satisfies SSR 16-3p.

### D. ALJ's Step-Five Findings Were Supported by Substantial Evidence

Plaintiff argues the ALJ's step-five findings were not supported by substantial evidence. In particular, Plaintiff contends that the ALJ posed an improper hypothetical question to the VE, because the RFC was unsupported by substantial evidence. In support, Plaintiff cites "the reasons discussed above," which the undersigned interprets as repeating his various arguments as stated above in Parts IV.A-C. For the reasons explained above in Parts IV.A-C, the undersigned identifies no error in the ALJ's evaluation of the evidence supporting the RFC, and the undersigned concludes the RFC was supported by substantial evidence. Plaintiff's argument fails.

Finally, Plaintiff points out that the VE testified that all competitive employment would be eliminated for a person who could not complete an eight-hour workday, five days a week on a consistent basis due to fatigue, as well as for a person who needed to rest in a recliner with his feet elevated. R. 55-56. Plaintiff appears to argue that the ALJ should have adopted these limitations, as Plaintiff testified he needed to elevate his feet in a recliner (R. 56) and suffered fatigue (R. 47). However, the ALJ is not required to address limitations not ultimately adopted into the RFC, even if the VE testifies that such limitations would preclude competitive employment. The undersigned identifies no error.

### RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

### OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by June 1, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 18th day of May, 2020.

*/s/ Jodi F. Jayne*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**