## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DOUG W. H.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0016-CVE-JFJ** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 17) of Magistrate Judge Jodi F. Jayne recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for Title II disability insurance benefits. Plaintiff timely filed an objection (Dkt. # 18) to the report and recommendation, and he seeks remand for further review. Defendant has filed a response (Dkt. # 19). The Court has reviewed the record and has conducted a de novo review of those portions of the findings or recommendations to which objection was made.

## I.

On February 19, 2016, plaintiff applied for Title II disability insurance benefits, alleging a disability onset date of June 18, 2015, later amended to February 9, 2016, the date he suffered a heart attack. Dkt. # 11, at 19, 162. Plaintiff claimed inability to work due to a massive heart attack, diabetes, depression, attention deficit hyper-active disorder (ADHD), arthritis, and sexual

dysfunction.  Id. at 184.  Plaintiff's claim was denied initially on May 26, 2016, and upon reconsideration on July 20, 2016.  Id. at 19.

Plaintiff, represented by counsel, requested a hearing before an administrative law judge (ALJ), and that hearing was held on November 13, 2017.  Id. at 44-61.  Plaintiff was forty-four-years-old at the time of the hearing.  Id. at 49.  Plaintiff has completed school up through the twelfth grade.  Id.  Since initially claiming disability, plaintiff has helped a friend with moving and construction remodeling.  Id.  However, since his heart attack and amended date of disability, plaintiff has not worked.  Id.  Plaintiff lives in Vera, Oklahoma with his wife.  Id. at 50.  Plaintiff testified that he could not return to work because he gets "fatigued and tired easily."  Id. at 51.  His main problems are shortness of breath and fatigue.  Id.  He stated that if he walks thirty to forty feet, he has to stop, sit down, and catch his breath.  Id.  This does not just happen with walking; it happens when plaintiff does other activities, like laundry.  Id.  Plaintiff's doctor wanted him to go to a heart rehabilitation center, but he did not have the funds to do so.  Id. at 52.  However, plaintiff does have health insurance.  Id.  Plaintiff testified that he lies down for an hour to an hour and a half per day, and sits in his recliner for the rest of the day.  Id. at 53.  He was taking medication for depression.  Id.  Plaintiff used to smoke cigarettes, but has stopped doing so.  Id. at 53-54.

At the disability hearing, the ALJ called vocational expert (VE) Michael Wiseman  to testify about plaintiff's ability to work.  Id. at 56.  The VE first testified that plaintiff has been a truck driver (Dictionary of Occupational Titles (4th ed. Rev. 1991) [DOT] § 904.383-012), which is medium, semi-skilled work with an SVP of 4.  Id. at 57.  Plaintiff has also been a CNC off-loader (or off-bearer, the DOT equivalent) (DOT § 677.665-010), which is medium, unskilled work with an SVP of 4.  Id. at 58.  The ALJ next asked the VE a series of hypotheticals.  Id.  The ALJ asked the VE:

2

> Say we had an individual the same age, education and work experience as the claimant who was limited to sedentary work as described by the Commissioner. Could occasionally carry 10 pounds, frequently up to 10 pounds. Stand/walk at least two hours in an eight-hour workday and sit at least six hours.

Id. The ALJ stated that this hypothetical would eliminate plaintiff's past work. Id. at 59. However, there would be other jobs in the national economy that the hypothetical individual could perform, such as order clerk food and beverages (DOT § 209.567-014, 130,000 jobs in the national economy), which is unskilled, sedentary work with an SVP of 2; optical goods assembler (DOT § 713.687-018, 72,000 jobs in the national economy), which is unskilled, sedentary work with an SVP of 2; and a table worker (DOT § 739.687-182, 192,000 jobs in the national economy), which is unskilled, sedentary work with an SVP of 2. Id. The ALJ next asked the VE whether an individual who, due to fatigue, could not complete an eight-hour workday, five days per week, on a consistent basis; could work while sitting, standing, or walking for a total of only four hours in an eight-hour workday; and could lift up to ten pounds, could perform the work just listed. Id. The VE responded that the hypothetical individual could not perform the jobs listed. Id. Plaintiff's counsel asked if the hypothetical individual had to sit with his feed elevated, whether he could perform the jobs listed, and the VE responded that he or she could not. Id. at 60.

On February 2, 2018, the ALJ issued a written decision finding plaintiff not disabled. Id. at 32. The ALJ first found that plaintiff has not engaged in substantial gainful activity since February 9, 2016. Id. at 22. The ALJ also found that plaintiff has the severe impairments of status-post myocardial infarction, hypertension, coronary artery disease status-post stenting, diabetes mellitus, and obesity. Id. The ALJ next found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  Id. at 23.  The ALJ addressed plaintiff's residual functional

capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).  Specifically the claimant can lift and/or carry ten pounds occasionally and up to ten pounds frequently.  He can stand and/or walk at least two hours in an eight hour workday.  He can sit at least six hours in an eight hour workday.

Id. at 23-24.

In his RFC determination, the ALJ considered plaintiff's Adult Disability Report dated

February 2016, in which plaintiff stated that the following physical or mental conditions limited his

ability to work: massive heart attack, diabetes, depression, ADHD, arthritis, and sexual dysfunction.

Id. at 24.  The ALJ also considered an Adult Function Report dated July 4, 2016, in which plaintiff

stated that he was unable to breathe and could not function the way he used to function.  Id.  His

condition allegedly affected his ability to lift, squat, bend, stand, reach, walk, climb stairs, remember,

complete tasks, concentrate, understand, follow instructions, use his hands, and get along with

others.  Id.  The ALJ then recounted plaintiff's testimony at the hearing.  Id. at 25.  After stating a

detailed history of plaintiff's medical history, the ALJ determined that plaintiff was unable to

perform any past relevant work, but he could perform the jobs of order clerk food and beverage,

optical goods assembler, and table worker.  Id. at 30-31.

On November 9, 2018, the Appeals Counsel denied plaintiff's request for review of the

ALJ's decision.  Id. at 5.  Plaintiff thereafter sought judicial review.  The Court referred the case to

the magistrate judge, who entered a report and recommendation recommending that the Court affirm

the Commissioner's decision.  Dkt. # 17, at 18.

**II.**

4

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has

5

"a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id*. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id*.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

## III.

### A.

Plaintiff first argues that the magistrate "overlook[ed] the distinction between diastolic and systolic cardiac dysfunction,[1] as the ALJ did . . . and that preserved systolic ejection fraction does not indicate equally preserved diastolic function, which is the reason [plaintiff's doctor, Andrew Kurklinsky, M.D.,] upgraded the diastolic dysfunction from Grade I to Grade II." Dkt. # 18, at 2. Plaintiff also argues that the ALJ's rejection of the opinions of Raj. H. Chandwaney, M.D., and Robyn Lovitt, M.D., plaintiff's treating physicians, was not reasonable. Id.

Following a heart attack that occurred on February 9, 2016, plaintiff underwent a transthoracic echocardiogram (echo) on June 10, 2016. Dkt. # 11, at 374-75. The echo showed

---

[1]    Diastolic cardiac dysfunction is when the left ventricle cannot relax or fill fully, indicating a filling problem; systolic cardiac dysfunction is when the left ventricle cannot contract vigorously, indicating a pumping problem. See The Mayo Clinic, Heart Failure: Symptoms & causes https://www.mayoclinic.org/diseases-conditions/heart-failure/symptoms-causes/syc-2037 3142 (last visited June 15, 2020).

"[l]ow normal left ejection fraction of 50-55%"[2] and an "[a]bnormal septal motion without other regional wall motion abnormalities appreciated"; "[m]ild concentric left ventricular hypertrophy"; "[m]ild left ventricular diastolic dysfunction with normal left atrial volume"; and [n]o functionally significant valvular disease." Id. at 375.  The left ventricular diastolic function was noted as "mildly impaired (grade 1) with a relaxation abnormality demonstrated." Id.  On November 14, 2016, plaintiff underwent a second echo, which was interpreted by Dr. Kurklinsky. Id. at 446-47.  This study showed a left ventricular ejection fraction of 55%, "[d]istal septal and apical hypo to akinesis," and "[d]iastolic noncompliance." Id. at 446.  Dr. Kurkslinsky further noted the diastolic dysfunction was "Grade II". Id. at 447.  In November 2017, Dr. Kurklinsky further noted that plaintiff's "[s]hortness of breath is not adequately explained by his objective coronary anatomy as was recently clarified," and "[h]e will benefit from repeat [echos] with careful assessment of diastolic function." Id. at 457.

Plaintiff argues that the ALJ overlooked the distinction between diastolic and systolic cardiac dysfunction, which is the reason Dr. Kurklinsky upgraded the diastolic dysfunction from Grade I to Grade II. Dkt. # 18, at 2.  Plaintiff presumably is referring to the June 2016 echo, which showed a Grade I diastolic impairment, and the November 2016 study, which showed a Grade II diastolic dysfunction. Dkt. # 11, at 374-75, 447.  The ALJ addressed the June 2016 echo study and accurately noted the study's conclusions, including the "low normal" left ejection fraction of 50-55%. Id. at 26.  The ALJ did not address the November 2016 echo, but plaintiff fails to point to any evidence

---

[2]   Ejection fraction "is a measurement of the percentage of blood leaving your heart each time it contracts."   The Mayo Clinic, Ejection Fraction: What does it measure? https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited June 11, 2020).  An ejection fraction of 55% or higher is considered normal, and between 50 and 55% is usually considered borderline. Id.

demonstrating that the noted change from Grade I to Grade II means that his cardiac condition materially worsened, or that such a change would have any bearing on his functional limitations. See Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005) ("The claimant bears the burden of establishing a prima facie case of disability at steps one through four."); Vititoe v. Colvin, 549 Fed. App'x 723, 730 (10th Cir. 2013)[3] ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).   Despite this failure to discuss the November 2016 echo, the results of that study—including left ventricular ejection fraction of 55%—were not materially worse than those from the June 2016 study.  Dkt. # 11, at 446-47.  Moreover, while an ALJ must discuss evidence that is inconsistent with the RFC, he is not required to discuss every piece of evidence in the record.  See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) (The ALJ "must discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (citation omitted).

Plaintiff also argues that the rejection of the opinions of Drs. Chandwaney and Lovitt was unreasonable.  Dkt. # 18, at 2.  When a medical opinion comes from a treating source, the ALJ must give it controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  If the ALJ finds the opinion is deficient in either respect, then the ALJ must consider several factors in determining the weight to be given to the medical opinion. See 20 C.F.R. § 404.1527(c).  Those factors include: (1) the examining relationship; (2) the

---

[3]     Unpublished decisions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist.  Id.  If, after considering the relevant factors, the ALJ rejects the opinion completely, "he must then give specific, legitimate reasons for doing so."  Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotations omitted).  In all cases, the ALJ must give "good reasons" for the weight assigned to a treating physician's opinion.  20 C.F.R. § 404.1527(c)(2); Watkins, 350 F.3d at 1301.

In May 2016, Dr. Chandwaney prepared a letter opinion, which states that plaintiff's myocardial infarction "has caused significant injury to his heart," and he "has had a difficult recovery since that heart attack."  Dkt. # 11, at 391.  Dr. Chandwaney stated that plaintiff "has been unable to perform any strenuous activities."  Id.  He noted his hope that, "through participation in cardiac rehabilitation, smoking cessation and optimal medical therapy, his condition might improve in the future."  Id.  However, he opined that, "[f]or the time being, I do believe he is physically disabled due to his medical condition."  Id.  The ALJ stated that he gave "no weight" to Dr. Chanwaney's opinion that plaintiff is physically disabled.  Id. at 30.  The ALJ explained that Dr. Chandwaney's opinion was for only a period of time, and the opinion was given prior to plaintiff's updated (June 2016) echo showing an ejection fraction of 50-55%.  Id.  The ALJ further explained that Dr. Chandwaney's opinion was contradictory, in that he stated that plaintiff could not do any strenuous activities, which does not equate to a complete physical disability.  Id.  Lastly, the ALJ explained that a determination of a disability is an issue reserved to the Commissioner.  Id.  The only functional limitation Dr. Chandwaney mentioned was an inability to perform "any strenuous activities," which is vague and unsupported by specific assessments.  Id. at 391; see Cowan v. Astrue, 552 F.3d 1182,

9

1189 (10th Cir. 2008) (noting that a physician's statement providing no information about the nature and severity of a claimant's physical limitations or activities he or she could still perform was not a true medical opinion).  Moreover, as the ALJ noted, a restriction of no "strenuous activities" does not equate to a complete physical disability.  Dkt. # 11, at 30.  The Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Chandwaney's opinion, in compliance with the regulations and Tenth Circuit law.  See 20 C.F.R. § 404.1527(c); Watkins, 350 F.3d at 1301.  Even though Dr. Chandwaney was a cardiac specialist and plaintiff's treating physician, his opinion was vague, unsupported with clinical findings, internally inconsistent, and included opinions reserved for the Commissioner.  Nor was the ALJ required to re-contact Dr. Chandwaney regarding his opinion or seek another medical opinion, as plaintiff points to no issues, such as insufficient or inconsistent evidence, that would require further development of the record.  See 20 C.F.R. § 404.1520b(b)(2)(I) (ALJ may re-contact medical source when evidence is inconsistent or insufficient for determination of disability).  The Court rejects plaintiff's argument that the ALJ unreasonably did not consider the opinion of Dr. Chandwaney.

Turning to Dr. Lovitt's opinion, in September 2017, Dr. Lovitt noted during an office visit that plaintiff had been told by his previous doctor and cardiologist that he should not be doing any strenuous activity.  Dkt. # 11, at 450.  Dr. Lovitt noted that, "[a]t this juncture, I would not clear him for any strenuous activity or work without first clearing with a cardiologist."  Id.  The ALJ stated that Dr. Lovitt's note did "not conflict with the sedentary [RFC] assessment given" in the decision.  Id. at 30.  Plaintiff does not point to anything specific in the ALJ's analysis of Dr. Lovitt's opinion that would be error.  Therefore, the Court rejects plaintiff's argument.

**B.**

10

Plaintiff next argues that the ALJ failed to account for plaintiff's obesity in the RFC determination.  Dkt. # 18, at 2.  Plaintiff argues, in conjunction with this, that the ALJ failed to consider plaintiff's subjective testimony concerning his obesity.  Id. at 3.  Finally, plaintiff argues that, even if plaintiff found a job, there is no evidence that he could hold that job because of the effects of his combined impairments.  Id.

An ALJ must consider the effects of obesity as part of the RFC determination.  See SSR 02-01p, 2000 WL 628049.  Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment."  Id.  Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record."  Id.  The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions."  Razo v. Colvin, 663 Fed. App'x 710, 716 (10th Cir. 2016).

Here, the ALJ found that plaintiff's obesity was a severe impairment at step two.  Dkt. # 11, at 22.  At step three, he stated that he considered obesity as set forth in SSR 02-01p and noted that he would consider "any functional limitation resulting from the obesity in the [RFC] assessment in addition to any limitations resulting from any other physical or mental impairment identified."  Id. at 23.  In the RFC discussion, the ALJ noted plaintiff's morbid obesity and his height, weight, and body mass index (BMI) as observed throughout the record.  See id. at 26-28.  Plaintiff cites to no evidence in the record where a medical provider attributed any additional functional limitations to obesity.  By contrast, at a recent examination, Dr. Kurklinsky noted plaintiff's morbid obesity, but observed essentially normal physical findings consistent with the ALJ's RFC determination.  Id. at

11

458.  The Court finds that the ALJ's discussion of obesity was reasonable and sufficient.  The ALJ clearly acknowledged and addressed plaintiff's obesity at steps two and three and, in discussing the RFC, but nonetheless found that plaintiff could perform sedentary work.  Plaintiff points to no conflict or lack of development in the record regarding obesity.  He also has not pointed to any medical evidence indicating that his obesity resulted in functional limitations greater than those stated in the RFC.  See Rose v. Colvin, 634 Fed. App'x 632, 637 (10th Cir. 2015) (finding no error in obesity evaluation where the ALJ found obesity severe and included specific postural limitations consistent with the record, but did not specifically mention obesity in the RFC determination).  The diagnosis of obesity does not necessarily translate into functional limitations.  The Court thus rejects plaintiff's first two arguments regarding his obesity.

Regarding plaintiff's last argument, that there is no evidence that he could hold the jobs that the ALJ stated plaintiff could perform, plaintiff points to no evidence that he could not perform these jobs.  As discussed above, the ALJ's discussion in formulating the RFC was extensive and reasonable.  The Court rejects plaintiff's last argument, and finds that the decision of the Commissioner should be affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision is **affirmed**.  A separate judgment is entered herewith.

**DATED** this 15th day of June, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE